UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOSHUA PARKER #599627                    CIVIL ACTION NO. 17-cv-0465

VERSUS                                   JUDGE FOOTE

DARRYL VANNOY                            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Joshua Parker ("Petitioner") of the second-degree murder of 17-year-old Phillip Livigni during a drug transaction. Petitioner's conviction and mandatory life sentence were affirmed on appeal. State v. Parker, 113 So.3d 471 (La. App. 2d Cir. 2013), writ denied, 125 So.3d 1101 (La. 2013). Petitioner also filed a post-conviction application in state court. He now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended that his petition be denied.

**Sufficiency of the Evidence**

**A. Elements of the Crime**

There is no dispute that Petitioner shot and killed Phillip Livigni. Two witnesses testified that Petitioner shot the victim after demanding the victim give him his money or drugs. Petitioner did not testify at trial, but he gave a recorded statement to police that was played for the jury. Petitioner, in that statement, admitted to the shooting but claimed it was in self-defense.

Petitioner was charged with second-degree murder, which the law defined as the killing of a human being: (1) when the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the perpetration or attempted perpetration of certain felonies including armed robbery or simple robbery even though the offender has no intent to kill or to inflict great bodily harm. La. R.S. 14:30.1.

Petitioner claimed self-defense. A homicide is justifiable in Louisiana when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20. When a defendant claims justifiable homicide by an act in self-defense, the State has the burden of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. State v. Johnson, 277 So.3d 1263, 1276-77 (La. App. 2d Cir. 2019).

### B. Relevant Evidence

Don Heflin, an eyewitness, testified for the State. Heflin said he met Petitioner a few weeks before the murder, and they would hang out and smoke marijuana. Heflin was then living with his grandmother on Stratmore Circle in southeast Shreveport, and Petitioner lived in Mansfield. He would sometimes buy small amounts of marijuana, in the $50 range, from Petitioner.

Heflin admitted that he stole a firearm, later described as a .38 Special revolver, and other property from a car in his grandmother's neighborhood, and he sold the gun to Petitioner for $100 about a week before the killing. Heflin had met Phillip Livigni about

the same time he met Petitioner, but those two did not know each other. Livigni liked to use Oxycontin, and Heflin had a friend who could sometimes supply it.

Heflin and Petitioner were hanging out with Petitioner's girlfriend at Heflin's grandmother's house when Livigni called looking for Oxycontin. Heflin said he would check with his guy, but he asked Livigni if he had any marijuana, and Livigni said that he did. Petitioner became involved in the conversation and said he could supply Livigni with Oxycontin, and they agreed to meet at University Elementary School for Petitioner to sell Livigni Oxycontin and for Livigni to sell Heflin marijuana.

Petitioner, his girlfriend, and Heflin drove to the nearby school. The girlfriend waited in the car, and the two young men waited around back. Livigni soon arrived, and he was accompanied by Caleb Duos. Heflin said he had met Duos once before.

As Livigni and Duos walked up, Petitioner asked Heflin if that was his friend. Heflin said yes, "and he upped on him with a pistol." Asked to clarify, Heflin said, "Josh (Petitioner) came up with a pistol on Phillip (Livigni)." Heflin said that Livigni had not done anything to attack or threaten them in any way, and he did not see a weapon on Livigni. Petitioner told Livigni, "Give me the shit." Livigni pushed the gun out of his face. Petitioner then pushed Livigni with his free hand and fired the gun with the other. The bullet hit Livigni in the side or back, and Livigni fell to the ground. Duos took off running.

Heflin said he asked Petitioner what he was doing, and Petitioner "looked a little shocked" after the shooting. But Petitioner nonetheless asked the victim where "it" was. Livigni said it was in his pocket, and Heflin saw Petitioner go to Livigni and search through his pockets. A police officer later testified that a guitar pick and keys to the victim's vehicle

were found on the ground in that area. The victim's wallet, with $60 inside, was recovered from the victim at the hospital.  No drugs were found on the victim.

Heflin said that later, when they were in the car, Petitioner showed him the victim's cell phone and said he did not realize he had taken it because of the shock of the moment, but later realized he had grabbed it.  The group soon drove to the Mansfield area, where Petitioner packed his things, threw the gun in the woods near Toledo Bend, and threw the victim's cell phone into a pond in his grandparents' backyard.  Heflin said that he believed Petitioner took money but not any marijuana from the victim.

The group met with Petitioner's parents on a dirt road, and they gave him some money.  Petitioner's grandmother gave him a bag of change.  The group spray-painted the car to change its color and headed for Rhode Island, where Heflin had family.  Once there, Petitioner had the car crushed at a scrap yard.  Heflin arranged with his father and a Shreveport attorney to turn himself in.  Heflin admitted at trial that he faced a charge of simple burglary in Caddo Parish.  He agreed with the prosecutor that, while his cooperation would be taken into consideration in that case, there were no promises of any specific outcome.

Caleb Duos testified that he and Livigni were close friends.  Livigni asked Duos to go with him to buy drugs at a school because Livigni was afraid that he might be jumped. As the two walked to the meeting spot at the school, Duos was suspicious because Heflin, who he just met about two days earlier, "was kind of backing up trying to hide from me, and then he was pointing towards us."  Duos did not see Petitioner, whom he had not met, because he was hiding.

Petitioner then appeared and "was kind of sketchy," and walked up to them kind of fast. Petitioner walked up to Livigni, who said something like, "I'm the one that wants to buy," and Petitioner pulled out a gun. Petitioner cocked the gun and held it at his waist. Duos said that his attention was then focused on the gun, but he sensed that Livigni was turning around maybe to talk to Heflin when Petitioner pulled the trigger. Duos saw the smoke and fire, and he immediately ran. Duos looked back once. He heard Livigni say, "You shot me," and he saw Heflin and Petitioner looking like they were surprised but walking up to Livigni. Duos ran to the nearby Circle K, called 911 to report the shooting, and waited for police to arrive. Duos testified that neither he nor Livigni had a gun on them that day, and Livigni never attacked Petitioner.

Rhode Island officials were given information about the murder investigation, and they located Petitioner. A Rhode Island police officer testified at trial about the arrest of Petitioner, who first gave a false name and inconsistent information about his date of birth and social security number. Petitioner finally admitted his real identity and was taken into custody. The Rhode Island officer consulted with Louisiana officials, who asked him to attempt to obtain a statement from Petitioner, which was taken after Miranda warnings and a waiver.

Petitioner's recorded statement was played for the jury. Petitioner said that he and Heflin wanted to buy drugs, and Heflin made some calls and arranged a meeting for Petitioner to buy an ounce of marijuana and Heflin to buy Oxycontin. Petitioner said that when the two sellers approached him and Heflin behind the school, Livigni (who he did not know) said something like "give the shit up," and then took a swing at Petitioner.

Livigni allegedly took multiple swings at Petitioner, but Petitioner backed up and ducked to avoid the punches.  Livigni then "kind of like reached in his pocket."  Petitioner said that as soon as he saw that, he pulled his gun from his waistband, pushed Livigni, and saw that Livigni was pulling his hand out with an object.  Petitioner said he did not know whether it was a knife or a pistol, but it was black with ridges and looked like a gun.  Petitioner then pushed Livigni's right shoulder and fired without aiming.  He said he ran as soon as he pulled the trigger.

Petitioner said that he threw the gun in Toledo Bend, and he claimed the group discussed turning themselves in and that Petitioner would claim self-defense.  Before turning himself in, though, he agreed to first drive Heflin to Rhode Island, where Petitioner was arrested.  Petitioner denied that he took any money from the victim or Duos.

Detective Eric Farquhar, a Shreveport homicide detective, testified that he received information during the investigation that the weapon used to kill Livigni had been thrown into a pond on Petitioner's grandfather's property.  Police obtained a search warrant and sent a dive team to search for the weapon.  The divers did not find a weapon, but they did find two halves of a cell phone.

A forensic pathologist testified about the autopsy on the victim.  It showed that the bullet entered the victim's back and caused injuries to his lung, pancreas, liver, and small bowel, but the cause of death was the laceration of the abdominal aorta artery.  The pathologist noted that there was no soot in the wound, which suggested that there was more than two inches of distance between the gun and the victim when it was fired.

### C.  State Court Decision

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The state appellate court reviewed the evidence in detail and applied the evidence to the elements of the crime, while deferring to the jury's verdict in accordance with the Jackson standard.  It found that the evidence was sufficient to prove that Petitioner had the specific intent to kill Livigni, which would warrant a conviction for second-degree murder under the first prong of the statute.  The court cited cases that have recognized that specific intent to kill can be inferred from a person pointing and firing a gun at another.  Petitioner did not claim that the gun discharged accidentally; he said that he pointed the gun and fired it at close range.

The appellate court also found that the State proved that Livigni was not killed in self-defense.  Both Heflin and Duos testified that Petitioner was the aggressor.  Heflin said there was no indication that the victim was armed, and no weapon was found on the victim.  Self-defense would be disproved if the jury accepted that testimony and evidence more persuasive than Petitioner's version of the events.

The appellate court also found that second-degree murder was warranted under the second prong of the statute because there was evidence that Petitioner killed the victim during the commission or attempted commission of an armed robbery. Duos and Heflin testified that Petitioner pulled his gun and told the victim to give him "the shit," which could reasonably be construed by a jury to mean, in the context of a drug deal, money or drugs. Heflin said he saw Petitioner rifle through the victim's pockets, and he later saw him with the victim's cell phone.

### D. Analysis

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

Petitioner makes several arguments to support his claim that the evidence was not sufficient. He contends that Heflin was under indictment for burglary, admittedly used and sold drugs on a regular basis, stole the weapon that was used in the shooting, stole coins from his grandmother, and was evading the law in Rhode Island related to domestic battery

charges.  Those facts were put before the jury, and it was the jury's task to make the final assessment of Heflin's credibility.  "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review."  Schlup v. Delo, 115 S.Ct. 851, 868 (1995).

Petitioner argues that the State did not prove he took something of value from the victim.  He points to Heflin's testimony that he did not see what Petitioner got from the victim, but Heflin later said (inconsistently) that Petitioner got some cash.  Heflin did say that he did not actually see Petitioner take anything from the victim.  But Petitioner's argument ignores the fact that Heflin testified that Petitioner showed him the victim's cell phone, which Petitioner told Heflin he took from the victim, and a phone was recovered by police from the pond where Heflin said Petitioner threw it. Furthermore, evidence of even an attempted but unsuccessful armed robbery would be sufficient to satisfy this element of second-degree murder.

Petitioner attempts to make points about the relative sizes of the men involved and how him looking shocked or surprised after the shot was fired is not consistent with the contention that he intended to rob and shoot the victim.  These and similar arguments are of a nature to be presented to a jury.  "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."  Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).  The jury in this case assessed the credibility of the witnesses, drew inferences and conclusions from the evidence, and entered a verdict.  The appellate court carefully examined that verdict in light of the evidence and the Jackson standard, and its decision was a reasonable one.  Petitioner has not come close to showing that he is

entitled to overturn his conviction on habeas review under the demanding standards of Section 2254(d).

**Excessive Sentence**

Petitioner argued on direct appeal that his mandatory life sentence was constitutionally excessive because he was a 20-year-old first offender and had shown remorse for his actions.  The appellate court affirmed the sentence, noting that Petitioner's actions after the shooting were "callous and calculated, not remorseful."  Petitioner robbed the victim as he was on the ground dying, and he and Heflin painted a car, fled to Rhode Island, and had the car crushed, all in an attempt to avoid arrest.  Petitioner then gave a false identity when arrested and tried to blame the victim, for which there was no evidence in support.

The "summary" portion of Petitioner's federal habeas memorandum briefly mentions a claim that his sentence was excessive due to the lack of consideration of sentencing factors under La. C. Cr. Pr. 894.1, such as his youth and lack of criminal history, but the claim is not otherwise addressed in the memorandum.  The State argues that Petitioner effectively abandoned the claim by lack of adequate briefing.   The argument is sound.  "[A]llegations in a federal habeas petition that are inadequately briefed are waived and will not be considered."  Perez v. Davis, 2018 WL 7141435, *2 (N.D. Tex. 2018), citing Woods v. Cockrell, 307 F.3d 353, 357 (5th Cir. 2002).

The claim also lacks merit because the sentence was mandatory, and the Fifth Circuit has rejected habeas challenges to a state court's failure to comply with state sentencing rules such as Article 894.1.  Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987);

Butler v. Cain, 327 Fed. Appx. 455 (5th Cir. 2009). Furthermore, Petitioner has not pointed to any federal law clearly established by the Supreme Court that would entitle him to relief on the claim under 28 U.S.C. § 2254(d).

**Police Misconduct**

Detective Farquhar applied for and obtained a DeSoto Parish search warrant to search Petitioner's grandparents' pond. The affidavit in support of the warrant application described the investigation and noted that Petitioner's cousin had contacted a detective and described how Petitioner and Don Heflin arrived at the grandparents' home and immediately walked to a pond located on the 17 acres. The two spent a short time at the pond, then returned to the residence and left about 30 minutes later. The two men and Petitioner's girlfriend returned three days later and engaged in what the cousin believed was suspicious behavior. Detective Farquhar asked for a warrant to search the pond because he believed that Petitioner and Heflin may have disposed of evidence in the pond. Tr. 508-10. Detective Farquhar testified at trial that a dive team executed the warrant and "recovered two halves of a cell phone, but they did not recover a weapon." Tr. 1095. Heflin testified that it was the victim's phone that was thrown into the pond. Tr. 1193.

Detective Bowen did not testify at trial, but his police report states that the victim's vehicle was searched soon after the shooting. Police found a cell phone in the center console. Bowen's report stated that the phone lacked a SIM card and was not operational. Tr. 642.

Petitioner argues in his brief that he is entitled to habeas relief because the police made material and intentional misrepresentations to the judge who issued the search

warrant.  He argues that the police took Livigni's phone from his vehicle and planted it on the grandparents' property.  They then lied to the judge to obtain the warrant to search the pond.

Petitioner argues that the police lies and misconduct violated the Fourth Amendment, but a federal habeas court is generally barred from reviewing Fourth Amendment claims.  Stone v. Powell, 96 S.Ct. 3037 (1976).  In Stone, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  96 S.Ct. at 3037.  To satisfy the "opportunity for full and fair litigation" requirement, the state need only provide the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim.  Stone bars federal habeas consideration of that claim whether or not the defendant employs those available processes.  Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).

The State did not raise Stone in its brief, but the court is obliged to apply Stone sua sponte.  Davis v. Blackburn, 803 F.2d 1371 (5th Cir. 1986).  The Stone bar is fully applicable here.  Louisiana law provides an opportunity for a full and fair litigation of Fourth Amendment claims.  La. Code Crim. Proc. art. 703.  Petitioner may not have taken advantage of that process, but the bar still applies and forecloses habeas review of a claim under Franks v. Delaware, 98 S.Ct. 2674 (1978) that there were deliberate misstatements of material facts in an affidavit necessary to support issuance of a warrant.  Smith v.

Maggio, 664 F.2d 109 (5th Cir. 1981); Smith v. Deville, 2019 WL 1417197, *4 (W.D. La. 2019); Henderson v. Director, 2007 WL 2021343, *3 (E.D. Tex. 2007).

Petitioner's memorandum is uncertain, but he may also attempt to base a claim on an allegation that Detective Farquhar gave false testimony at trial. "The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction." Kinsel v. Cain, 647 F.3d 265, 271 (5th Cir. 2011) (citing Napue v. Illinois, 79 S.Ct. 1173 (1959). Petitioner has not presented any evidence in the state or federal proceedings that would support such a claim, and "[c]onclusory arguments cannot serve as a basis for habeas relief." Allen v. Vannoy, 659 Fed. Appx 792, 809 (5th Cir. 2016).

**Ineffective Assistance of Counsel**

### A. Introduction

Petitioner argues that his attorney rendered ineffective assistance of counsel ("IAC") by not filing a motion to suppress the cell phone evidence, not asking for funds to hire an investigator to investigate the chain of custody of the victim's phone and keys, not adequately questioning witnesses about the chain of custody, and failing to make particular objections on these issues to preserve them for appeal. All of these claims relate in some way to the evidence that the victim's cell phone was found in the pond.

To prevail on an IAC claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). The state

court denied the Strickland claims on the merits in summary decisions at all three levels. Tr. 1614-15, 1859 & 1889-1900.  The Supreme Court of Louisiana's final word was that Petitioner failed to show that he received IAC under the standard of Strickland.

## B. Habeas Burden

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.   The federal court's review is thus "doubly deferential."   Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id.  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. And this deference applies to the state court's decision "even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011).

## C. Analysis

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth

Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).

Petitioner has offered zero evidence in the state or federal court to support his bald claim that police misrepresented facts to the judge who issued the search warrant or otherwise planted the cell phone as evidence. Even if Petitioner had such evidence, it is now too late to offer it because review of a Strickland claim under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 131 S.Ct. at 1398. It would be reversible error for the federal court to hold a hearing to flesh out such a claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011). Petitioner has not come close to showing that the state court's denial of these Strickland claims on the merits was an objectively unreasonable application of Strickland based on the record that was before the state court.

The arguments about investigator funds, chain of custody, and objections to preserve error all relate to this same unsupported claim of false evidence surrounding the cell phone. Petitioner offers nothing but conclusory assertions, but "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000). Not one of these claims of IAC has any merit.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied and dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of

the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of November, 2019.

Mark L. Hornsby
U.S. Magistrate Judge